IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN HALL, CERRISA ANGEL GREEN, NIVIA WILSON, SINDY DE LA HOZ OCAMPO, TIFFANY GUADALUPE, ROBERT REITH, DAVID SCHWARTZBERG, NICOLE THOMPSON, MONA LIVAI, JEFFREY CRUICKSHANK, ANDREW DEARDORFF and LAURA SHAW, Individually and on Behalf of All Others Similarly Situated,<br><br>      **Plaintiffs,**<br><br>-against-<br><br>PROSOURCE TECHNOLOGIES, LLC, JASON ALT, SCOTT STENGER and GREGORY WHEELER, Jointly and Severally,<br><br>      **Defendants.** | 2:14 Civ. 02502 (SIL) |

**DECLARATION OF BRENT E. PELTON IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE SETTLEMENT**

I, Brent E. Pelton, declare as follows:

  1.  I am an attorney admitted before this Court. I am a member of the firm of Pelton & Associates, PC ("Pelton & Associates") in New York, New York, Plaintiffs' counsel herein. Pelton & Associates is a New York City based law firm that devotes at least ninety percent (90%) of its practice to representing plaintiffs in individual, collective and class action litigation seeking to recover unpaid wages and overtime compensation.

  2.  I am one of the lawyers primarily responsible for the prosecution of Plaintiffs' claims against Defendants in the following action: *Hall et al. v. ProSource Technologies, LLC, et al.*, E.D.N.Y. Case No. 2:14 Civ. 02502 (SIL) (hereinafter referred to as the "Action").

3.      I make these statements based on personal knowledge and would so testify if called as a witness at trial.

**Pelton & Associates' Qualifications**

4.      Pelton & Associates has substantial experience prosecuting and settling employment class actions, including large wage and hour class actions.

5.      Pelton & Associates has served as co-lead counsel on several wage and hour cases that district courts have certified as class actions and/or collective actions. *See Ack v. Manhattan Beer Distributors, LLC*, 11 Civ. 5582 (CBA)(SMG), 2012 U.S. Dist. LEXIS 67883 (E.D.N.Y. May 15, 2012) (FLSA collective action). *See also, e.g.*, *Morangelli v. Chemed Corp.*, 275 F.R.D. 99 (E.D.N.Y. 2011) (FLSA collective and Rule 23 class action); *Henry v. Little Mint, Inc.*, 12 Civ. 3996 (CM), Doc. 36 (S.D.N.Y. Jan. 22, 2013) (Rule 23 class action); *Guzelgurgenli v. Prime Time Specials, Inc.*, 11 Civ. 4549 (ADS)(WDW), 883 F. Supp. 2d 340 (E.D.N.Y. 2012) (FLSA collective action); *Morris v. Lettire Constr., Corp.*, 12 Civ. 0043 (NRB), 2012 U.S. Dist. LEXIS 134860 (S.D.N.Y. Sept. 18, 2012) (FLSA collective action); *Malloy v. Richard Fleischman & Assocs. Inc.*, 09 Civ. 322 (CM), 2009 U.S. Dist. LEXIS 51790 (S.D.N.Y. June 3, 2009) (FLSA collective action).

**Procedural History**

6.      On April 18, 2014 Jonathan Hall, Cerrisa Angel Green, Nivia Wilson, Sindy De La Hoz Ocampo, Tiffany Guadalupe, Robert Reith, David Schwartzberg, Nicole Thompson, Mona Livai (the "New York Class Representatives") commenced this action as a putative collective action under the Fair Labor Standards Act ("FLSA") and class action under Fed. R. Civ. P. 23, bringing claims under the New York Labor Law ("NYLL"). On May 30, 2014, New York Class Representatives filed an Amended Complaint including putative class action claims

under the Federal and New York WARN Acts. On July 3, 2014, the New York Class Representatives, Jeffrey Cruickshank, Andrew Deardorff and Laura Shaw (collectively, the "Named Plaintiffs") filed a Second Amended Complaint, asserting additional class claims under the Minnesota Fair Labor Standards Act ("MFLSA") and Iowa Wage Payment Collection Act ("IWPCA"). The Second Amended Complaint alleges that Defendants: failed to pay overtime premium pay for all hours worked over forty (40) in a week; failed to provide sixty (60) and ninety (90) days advanced notice of plant closing; and failed to provide wage notices. A true and correct copy of the Second Amended Class Action Complaint is attached hereto as **Exhibit A**.

7. Defendants ProSource Technologies, LLC, Jason Alt, Scott Stenger and Gregory Wheeler (collectively, "ProSource" or "Defendants") filed their Answer on July 24, 2014. (Dkt. No. 83) On September 5, 2014, the Court granted the parties' Consent Motion to Conditionally Certify a Fair Labor Standards Act Collective Action and Authorize Notice to be Issued to All Persons Alleged to be Similarly Situated. (Dkt. No. 103)

8. From the time Plaintiffs filed the Complaint through the present, over two hundred and forty (240) individuals became opt-in plaintiffs in this matter.

**History of Discovery and Litigation**

9. Before and during the formal litigation of this action, Plaintiffs' counsel conducted a thorough investigation into the merits of the potential claims and defenses. We engaged in extensive discussions with the Named and Opt-In Plaintiffs, produced documents to Defendants pursuant to Fed. R. Civ. P. 26(a), drafted demands for document production, interrogatories and requests to admit, responded to Defendants' demands for document production and interrogatories on behalf of the Named Plaintiffs and performed a significant amount of legal research.

10. We also reviewed and analyzed thousands of pages of time and payroll data provided by ProSource, assembled a comprehensive damages analysis, engaged in extensive settlement negotiations with Defendants' attorney in person and over the phone which included several revisions to our damages analysis, and prepared for and attended an all-day mediation.

11. The Named Plaintiffs assisted with the preparation of the complaint, assisted with the factual investigations of the claims, responded to discovery requests, and Named Plaintiff Jonathan Hall attended a lengthy mediation with Ruth Raisfeld, Esq.

**Settlement Negotiations**

12. Over the course of over thirteen (13) months of litigation, the parties engaged in informal and formal settlement negotiations. Specifically, the parties exchanged thousands of pages of documents for review. Defendants compiled and exchanged certain documents regarding hours worked by Plaintiffs, and Plaintiffs compiled and exchanged a comprehensive damages analysis. Defendants analyzed and responded to Plaintiffs' damages analysis. The parties have had several discussions by telephone and exchanged multiple emails regarding the damages analysis and factual and legal issues in this case. In addition, the parties prepared for and attended a mediation with Ruth Raisfeld, Esq. on May 21, 2014. After a full day, the parties were finally able to come to a settlement in principle.

13. During the next several weeks, the parties negotiated the remaining terms of the settlement, which were memorialized in a formal Settlement Agreement and Release ("Settlement Agreement"). A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit B**.

14. In Plaintiffs' counsel's estimation, the settlement represents a significant percentage of the recovery that the class and collective members would have achieved had they

4

prevailed on all of their claims, survived an appeal, and sought to enforce and collect upon a judgment.

15. The Named Plaintiffs and the Defendants have all agreed upon the written terms of the Settlement Agreement and have executed the final Settlement Agreement.

16. At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis.

**The Terms of the Settlement Agreement**

17. The parties have agreed to settle the claims of the Named Plaintiffs, Opt-in Plaintiffs and all current and former ProSource employees working in New York during the relevant statutory period (the "New York Class Members"). (Ex. B. (Settlement Agreement) ¶¶ 1.5, 1.18).

18. The parties have agreed, for settlement purposes only, to certification of the settlement class and subclasses pursuant to Federal Rule of Civil Procedure 23. (*Id*. at ¶ 2.2) There are in excess of forty (40) Rule 23 Class and Subclass Members.

19. The Settlement Agreement sets forth that Defendants agree to pay a total gross Settlement Amount of $1,125,000.00, to settle this case (the "Settlement Amount"). (*Id*. at ¶¶ 1.33, 3.1(A)). The Settlement Amount covers Qualified Settlement Recipients (Named Plaintiffs, Opt-in Plaintiffs and New York Class Members who submit timely Claim Forms and who have not opted out of the settlement) awards, Named Plaintiffs' service awards and attorneys' fees and costs. (*Id*.)

20. Defendants will cause the settlement checks amounting to half of the Settlement Amount to be received by Plaintiffs' Counsel within fifteen (15) calendar days of the Effective Date ("First Payment"). (*Id.* at ¶ 3.1(B)). Defendants will cause the settlement checks amounting

to the remaining half of the Settlement Amount to be received by Plaintiffs' Counsel within nine (9) months of the First Payment ("Second Payment") (*Id.*) Plaintiffs' Counsel will then distribute the settlement checks to Qualified Settlement Recipients within three (3) days of each receipt of settlement checks from Defendants. (*Id.* at ¶ 3.1(C)).

21. Qualified Settlement Recipients will have one hundred and twenty (120) days from the date of mailing to cash their check. (*Id.* at ¶ 1.2). Qualified Settlement Recipients will have an additional ninety (90) days year from the end of the Acceptance Period to request a replacement check, which will be provided by Defendants so long as the original Settlement Check has not been negotiated. (*Id.* at ¶ 3.1(D)) Any settlement checks that are not processed where no replacement check has been requested, and any portion of the Settlement Amount that is unclaimed shall remain with Defendants. (*Id.* at ¶ 3.4(C))

**Allocation Formula**

22. A Qualified Settlement Recipient's settlement allocation shall be determined by whether the individual has alleged wage notice claims, overtime claims and/or WARN Act claims. For purposes of allocation, the settlement agreement sets forth that Qualified Settlement Recipients who have wage notice claims are Wage Notice Subclass Members, Qualified Settlement Recipients who have overtime claims are Overtime Plaintiffs, which includes both Collective Action Members and Overtime Subclass Members, and Qualified Settlement Recipients who have WARN Act Claims are WARN Act Subclass Members. (*Id.* at ¶¶ 1.22, 1.36, 1.38) The Settlement Amount less attorneys' fees, costs, and service awards ("Net Settlement Amount") will be distributed as follows: 75% to all Overtime Plaintiffs; 20% to all WARN Act Subclass Members and 5% to all Wage Notice Subclass Members. (Ex. B (Settlement Agreement) ¶¶ 1.25, 1.35, 1.37) If the Qualified Settlement Recipient is an Overtime Plaintiff, his or her allocation will be based on: (a) if the Qualified Settlement Recipient is an

6

Overtime Subclass Member, the number of overtime hours he or she worked in New York from January 1, 2013 through August 7, 2015 and (b) if the Qualified Settlement Recipient is a Collective Action Member, the number of overtime hours he or she worked from the first day of the first payroll week following the date that is three (3) years prior to their filing their opt-in form through August 7, 2015 (as reflected in a confidential document exchanged by the Parties) as a percentage of the total number of overtime hours worked by all Overtime Plaintiffs during the above specified time periods (who are also Qualified Settlement Recipients). (*Id.* at ¶ 3.4(B)) If the Qualified Settlement Recipient is a WARN Act Subclass Member, his or her allocation will be based on the number of business days prior to July 9, 2014 that the individual's employment was terminated by ProSource (as reflected in such confidential document) as a percentage of the total number of business days prior to July 9, 2014 that all WARN Act Subclass Members (who are also Qualified Settlement Recipients) employment was terminated. (*Id.*) If the participating Qualified Settlement Recipient is a Wage Notice Subclass Member, his or her allocation will be based on the number of weeks he or she was employed by ProSource in New York during the Relevant Time Period (as reflected in such confidential document) as a percentage of the total number of weeks of employment by ProSource for all Wage Notice Subclass Members (who are also Qualified Settlement Recipients) in New York. (*Id.*)

23. Settlement Checks paid to Qualified Settlement Recipients will be allocated as follows: (1) that portion of any payment attributed to unpaid overtime wages will be allocated fifty percent (50%) to W-2 wage payments to compensate for alleged unpaid wages and fifty percent (50%) as non-wage interest for which a Form 1099 will be issued; (2) that portion of any payment attributable to WARN Act claims will be allocated one hundred percent (100%) to alleged back wages due, for which a W-2 Form will be issued and applicable payroll taxes withheld; and (3) that portion of any payment attributable to wage notice claims shall be

7

allocated one hundred percent (100%) to alleged non-statutory penalties due, for which a form 1099 will be issued. (*Id*. at ¶ 3.4(C))

**The Class Members' Reaction to the Settlement**

24. The Named Plaintiffs strongly support the settlement, as evidence by their signatures on the Settlement Agreement. In addition, many of the Opt-in Plaintiffs and New York Class Members have called Plaintiffs' counsel's firm and have stated that they are pleased with the settlement.

I declare under penalty of perjury, under 28 U.S.C.§1746, that the foregoing is true and correct.

Executed this 7th day of August, 2015.
New York, New York

>*/s/ Brent E. Pelton*
>Brent E. Pelton
>
>PELTON & ASSOCIATES, PC
>111 Broadway, Suite 1503
>New York, NY 10006
>Telephone: (212) 385-9700
>Facsimile: (212) 385-0800
>Email: pelton@peltonlaw.com