**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JONATHAN HALL, CERRISA ANGEL GREEN, NIVIA WILSON, SINDY DE LA HOZ OCAMPO, TIFFANY GUADALUPE, ROBERT REITH, DAVID SCHWARTZBERG, NICOLE THOMPSON, MONA LIVAI, JEFFREY CRUICKSHANK, ANDREW DEARDORFF and LAURA SHAW, Individually and on Behalf of All Others Similarly Situated,** | **2:14 Civ. 02502 (SIL)** |
|                          **Plaintiffs,** | |
| **-against-** | |
| **PROSOURCE TECHNOLOGIES, LLC, JASON ALT, SCOTT STENGER and GREGORY WHEELER, Jointly and Severally,** | |
|                       **Defendants.** | |

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE SETTLEMENT AND APPROVAL OF CLASS AND COLLECTIVE COUNSEL'S FEES AND COSTS**

The above-captioned matter came before the Court on Plaintiffs' Motion for Final Approval of Class and Collective Settlement and Approval of Class and Collective Counsel's Fees and Costs ("Motion for Final Approval") (Dkt. Nos. 267-269).

**I.      Background and Procedural History**

1.      The parties' proposed settlement resolves all claims in the action entitled *Jonathan Hall, et al. v. ProSource Technologies, LLC, et al.*, Civil Action No. 14 Civ. 2502 (SIL) (the "Litigation"), which is currently pending before this Court.

2.      The Plaintiffs in this action allege Defendants failed to pay overtime premiums for the hours that they worked over 40 in a workweek in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the New York Labor Law ("NYLL"), §§ 650 *et seq.*,

the Iowa Wage Payment Collection Act ("IWPCA"), Iowa Code §§ 91A, *et seq.* and the Minnesota Fair Labor Standards Act ("MFLSA"), Minn. Stat. §§ 177.21 *et seq.* and supporting regulations, failed to provide sixty (60) or ninety (90) days advanced notice in violation of the Federal and New York State WARN Acts, and failed to provide wage notices in violation of the NYLL.

3.      On April 18, 2014 the Named Plaintiffs filed their Complaint as a putative class action under Fed. R. Civ. P. 23; on May 30, 2014, the Named Plaintiffs filed an Amended Complaint and, on July 3, 2014, the Named Plaintiffs filed their Second Amended Complaint. (*See* Dkt. Nos. 1, 43, 75). The Named Plaintiffs were case managers, case leads, site managers, paralegals, right of way specialists, title examiners, project managers and real estate specialists who worked for ProSource and who allege that they were not compensated at time and a half for all overtime work, were not provided ninety (90) days advanced notice of a plant closing and were not provided wage notices. Defendants filed their Answer to the Second Amended Complaint on July 24, 2014, wherein they disputed the material allegations and denied liability. (*See* Dkt. No. 83).

II.     **Overview of Investigation and Discovery**

4.      Plaintiffs' counsel has interviewed dozens of current and former employees of Defendants to gather information relevant to the claims in the litigation; obtained, reviewed, and analyzed thousands of pages of documents including but not limited to time and payroll data, emails and other communications; provided 26(a) disclosures; fielded questions from Plaintiffs and Class Members; drafted and exchanged demands for interrogatories and the production of documents with Defendants; drafted and exchanged responses to requests for interrogatories and demands for the production of documents for the twelve (12) named plaintiffs with hundreds of

pages of documents; performed extensive legal research; prepared for and attended a lengthy and comprehensive mediation and engaged in extensive settlement negotiations. (Pelton Decl. at ¶ 17.)

### III. Settlement Negotiations

5.      Over the course of nearly twenty (20) months of litigation, the parties engaged in substantial settlement negotiations in person, over the phone and through email. The parties exchanged thousands of pages of informal discovery and exchanged spreadsheets of payroll information and multiple versions of damages calculations utilizing the payroll records to facilitate the settlement discussions. After numerous discussions regarding the scope of liability, the parties agreed to attempt to resolve the litigation with the assistance of an experienced wage and hour mediator. A mediation was held with Ruth D. Raisfeld on May 21, 2015. After a full day of mediation, the parties were able to come to a settlement amount in principle. (*See* Dkt. No. 268 (Pelton Declaration in Support of Plaintiffs' Motion for Preliminary Approval of Settlement)).

6.      Over the next several weeks, the parties discussed the remaining settlement terms, which were memorialized in a formal Settlement Agreement and Release (*see* Dkt. No. 268-2) (the "Settlement Agreement"), attached to the Pelton Decl. as **Exhibit B**.[1]

7.      At all times during the settlement negotiation process, negotiations were conducted at an arm's-length basis.

8.      The Parties agreed to settle this case for a total Settlement Amount of $1,125,000.00 (the "Settlement Amount"). (Ex. B (Settlement Agreement) § 1.33). The Settlement Amount covers Class Members' awards, Service Awards, administration fees and costs, and attorneys' fees and costs. (*Id.*)  After attorneys' fees and costs and Service Awards for

---

[1] All exhibits refer to exhibits attached to the Pelton Decl.

the Named Plaintiffs , the remaining funds (the "Net Settlement Fund") will be allocated among the Named Plaintiffs, Opt-in Plaintiffs and New York Class Members who have completed a claim form and returned the claim form in the manner and time period set forth in the claim form (the "Qualifying Settlement Recipients").  (*Id.* at § 1.28)

9.      The portion of the Settlement Amount allocated to any Qualifying Settlement Recipient who fails to cash his or her check for more than one hundred and twenty (120) days after such payments are issued (the "acceptance period") and fails to request a replacement check up to ninety (90) days after the acceptance period shall remain with Defendants. (*Id.* at §§ 1.2; 3.1(D))

**IV.      Preliminary Approval of Settlement and Dissemination of the Notice**

10.      On September 29, 2015, the Court preliminarily approved the parties' proposed class settlement and authorized the issuance of Notice to Class Members. (*See* Dkt. No. 265). The Court also approved the Notice of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing, ("Notice") and authorized the mailing of the Notice to the Class and Collective Members. (*See id.*).

11.      Pursuant to the Court's Order (*see* Dkt. No. 265), Defendants provided Class and Collective Counsel with a confidential list of Class and Collective Members which included, to the extent maintained by Defendants, the Class and Collective Members' names, title, last known address and dates of employment with Defendants. Class and Collective Counsel mailed the Notice and Verification Form to the Class Members via First Class Mail on October 9, 2015.

12.      If a Class and Collective Member's Notice was returned by the USPS as undeliverable without a forwarding address, Class and Collective Counsel performed an advanced address search ("skip trace") on the address using Lexis-Nexis's nationwide address

4

database. (Sandoval Decl. ¶ 8). As of the date of this Order, of the five hundred and thirty-five (535) Notices that were mailed to Class and Collective Members, there were six (6) Notices that were undeliverable because Class and Collective Counsel was unable to locate the Class and Collective Members' current mailing address. (*Id.*)

13.     The Notices advised Class and Collective Members of applicable deadlines and other events, including the Final Approval Hearing, and how Class and Collective Members could obtain additional information regarding the case and settlement. (Castro Decl. ¶ 4).

**V.      Contributions of the Named Plaintiffs**

14.     The Named Plaintiffs were integral in initiating this class action and made significant contributions to the prosecution of the litigation. (*See* Pelton Decl. ¶ 11). The Named Plaintiffs served the class by providing detailed factual information regarding their job duties and hours worked, and the job duties and hours worked of the class members, assisting with the preparation of the complaint, producing documents in support of their claims, relaying information to Class and Collective Members during the pendency of this case and assuming the burden associated with assisting with litigation. (*Id.* at ¶ 13). In addition, the Named Plaintiffs also assisted Class and Collective Counsel with the settlement negotiations and Named Plaintiff Jonathan Hall attended a lengthy mediation with Ruth D. Raisfeld, which ultimately culminated in this settlement. (*Id.* at ¶ 14).

15.     The Named Plaintiffs also assumed other professional risks and burdens, including the potential for retaliation and blacklisting in the industry.

16.     Without the effort of the Named Plaintiffs, this case on behalf of the Class and Collective would not have been brought, and this settlement would not have been achieved.

17.     Service Awards of this type are commonly awarded in complex wage and hour litigation.

**VI.     Final Approval of Class Settlement**

18.     The Court held a fairness hearing on January 6, 2016.

19.     Having considered the Motion for Final Approval, the supporting declarations, the arguments presented at the fairness hearing, and the complete record in this matter, for good cause shown, the Court (i) grants final approval of the settlement memorialized in the Settlement Agreement, attached to the Pelton Decl. as Exhibit B; (ii) approves the service payments to the Named Plaintiffs in the amount of $3,500 each; and (iii) approves an award of attorneys' fees in the amount of $335,436.18 (30% of the Settlement Amount after subtracting costs) and reimbursement of litigation expenses in the amount of $6,879.39.

20.     Under Fed. R. Civ. P. 23(e), to grant final approval of a Settlement, the Court must determine whether the Proposed Settlement is "fair, reasonable and adequate." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 04 CIV. 8141 DAB, 2013 WL 1499412 (S.D.N.Y. Apr. 11, 2013). "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Massiah v. MetroPlus Health Plan, Inc.*, No. 11–cv–05669 (BMC), 2012 WL 5874655, *2 (E.D.N.Y. Nov. 20, 2012) (Cogan, J.) *citing Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116 (2d Cir. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal- Mart Stores*, 396 F.3d at 116 (internal quotations omitted).

21.     If the settlement was achieved through experienced counsels' arm's-length negotiations, '[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Massiah*, 2012 WL 5874655, at *2, citing *In re Top Tankers, Inc. Sec. Litig*., 06 Civ. 13761 (CM), 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008)(same); "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Id*., *citing Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010). "The Court gives weight to the parties' judgment that the settlement is fair and reasonable." *Id*. (citations omitted).

### A.     Procedural Fairness

22.     It is clear from the history of the case that the parties reached this settlement only after engaging in extensive investigation and discovery which allowed each side to assess the potential risks of continued litigation, and robust settlement discussions, including in person meetings and a lengthy mediation. The settlement was reached as a result of arm's-length negotiations between experienced, capable counsel after meaningful exchange of information and discovery.

### B.     Substantive Fairness

23.     In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974). The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of

discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recover; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. Because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," *Massiah*, 2012 WL 5874655 at *5, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement. All of the *Grinnell* factors weigh in favor of granting final approval of the Settlement Agreement.

24.     Litigation through trial would be complex, expensive, and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

25.     The response to the settlement has been positive. Class and Collective Counsel only received one (1) request for exclusion from the Settlement and no Class or Collective Member submitted an objection to the Settlement. (Pelton Decl. ¶ 10) "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern,* 553 F. Supp. 2d 337, 344–45 (S.D.N.Y.2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out); *see also Willix v. Healthfirst, Inc.,* No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where only 7 of 2,025 class member submitted timely objections and only 2 requested exclusion). Thus, this factor weighs strongly in favor of approval.

26.     The parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Warfarin*, 391 F.3d at 537. "The pretrial negotiations and discovery must be

sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotations omitted). The parties' discovery here meets this standard. Class and Collective Counsel has interviewed several current and former employees of Defendants to gather information relevant to the claims in the litigation; obtained, reviewed, and analyzed thousands of pages of documents including but not limited to time and payroll data, emails and other communications; provided 26(a) disclosures; fielded questions from Plaintiffs and Class and Collective Members; drafted and exchanged demands for interrogatories and the production of documents with Defendants and drafted and exchanged responses to requests for interrogatories and demands for the production of documents for the twelve (12) named plaintiffs with hundreds of pages of documents; performed extensive legal research. (Pelton Decl. ¶ 17).

27.     The risk of establishing liability and damages further weighs in favor of final approval. A trial on the merits would involve risks because Plaintiffs would have to defeat Defendants' arguments that, *inter alia*, the Plaintiffs were paid in accordance with the federal and state law. "Litigation inherently involves risks." *Massiah*, 2012 WL 5874655 at *4. The settlement alleviates this uncertainty. *See In re Ira Haupt & Co*., 304 F. Supp. 917, 934 (S.D.N.Y. 1969).

28.     The risk of maintaining the class status through trial is also present. Although the Plaintiffs have not yet moved for Rule 23 class certification, any such motion will be highly contested. Specifically, Defendants would argue that there are individualized questions as to the job duties and payment structure for the class and collective members that makes certification and ultimately trial on a class-wide basis impractical. Settlement eliminates the risk, expense, and delay inherent in this process. *Massiah*, 2012 WL 5874655, at *5.

29.     The parties negotiated heavily over the settlement amount taking into account Defendants' ability to pay a settlement that would compensate the class for their alleged unpaid wages. Even if the Defendants can withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9).  This factor does not hinder granting final approval.

30.     The substantial amount of the settlement weighs strongly in favor of final approval. "The determination whether a settlement is reasonable does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (W.D.N.Y. 2005) *citing In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 and *In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993). "'Instead, "there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."' Moreover, when a 'settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing "speculative payment of a hypothetically larger amount years down the road,"' settlement is reasonable under this factor." *Massiah*, 2012 WL 5874655 at \*5 (citations omitted). The eighth and ninth Grinnell factors favor final approval.

## VII.    Approval of the FLSA Settlement

31.     The Court hereby approves the FLSA settlement.

32.     Because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," *Massiah*, 2012 WL 5874655, at \*5, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement.

33. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bone fide disputes. *See Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *6 (S.D.N.Y. Nov. 29, 2010); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *7 (S.D.N.Y. Aug. 23, 2010). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 at 1353–54 (11th Cir.1982). If the proposed settlement reflects a reasonable compromise over contested issues, the Court should approve the settlement. *Id.* at 1354; *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7.

34. The Court finds that the FLSA settlement was the result of contested litigation and arm's-length negotiation, and that the settlement terms are fair and appropriate.

## VIII. Dissemination of Notice

35. Pursuant to the Preliminary Approval Order, Notice was sent by first-class mail to each identified Class and Collective Member at his or her last known address (with re-mailing of returned Notices). (Pelton Decl. ¶¶ 4-6) The Court finds that the mailed Notice fairly and adequately advised Class and Collective Members of the terms of the settlement, as well as the right of Class and Collective Members to opt out of the class, to object to the settlement, and to appear at the fairness hearing conducted January 6, 2016. Class and Collective Members were provided the best notice practicable under the circumstances. The Court further finds that the Notice and distribution of such Notice comported with all constitutional requirements, including those of due process.

## IX. Award of Fees and Costs to Class and Collective Counsel and Service Awards to Named Plaintiffs

36. Class and Collective Counsel did substantial work identifying, investigating, prosecuting, and settling the Named Plaintiffs' and the Class and Collective Members' claims.

37.     Class and Collective Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage-and-hour law and in class action law.

38.     The work that Class and Collective Counsel have performed in litigating and settling this case demonstrates their commitment to the Class and Collective and to representing the Class and Collective's interests.

39.     The Court hereby awards Class and Collective Counsel $335,436.18 in attorneys' fees or thirty percent (30%) of the Settlement Amount after subtracting Class and Collective Counsel's costs.

40.     The Court finds that the amount of fees requested is fair and reasonable using the "percentage-of-recovery" method, which is consistent with the "trend in this Circuit." *See McDaniel v. Cty. Of Schenectady,* 595 F.3d 411, 417 (2d Cir. 2010); *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir.2005); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases adopting the percentage-of-the-fund method).

41.     Class and Collective Counsel's request for thirty percent (30%) of the settlement amount is reasonable and "consistent with the norms of class litigation in this circuit." *See, e.g., Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452 (RLE), 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. March 24, 2008) (awarding 1/3 of $450,000.00 common fund in wage and hour case). Class Counsel's attorneys' fees request of thirty-three percent (33%) is in line with decisions in this Circuit which have routinely awarded between thirty and thirty-three percent (30-33%) of the settlement fund as attorneys' fees in wage and hour cases. *See, e.g., Thornhill v. CVS Pharmacy, Inc.*, No. 13 Civ. 5507 (JMF), 2014 U.S. Dist LEXIS 37007, at *7-8 (S.D.N.Y.

March 20, 2014) (noting that, "[i]n this Circuit, courts typically approve attorneys' fees that range between 30 and 33 percent" and citing cases) (citing *Guzman v. Joesons Auto Parts*, No. 11 Civ. 4543 (ETB), 2013 U.S. Dist. LEXIS 83342, 2013 WL 2898154, at *4 (E.D.N.Y. June 13, 2013) (collecting cases)).

42.     Class and Collective Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation. A percentage-of-recovery fee award of thirty percent of the settlement amount is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany,* 493 F.3d 110, 111–12 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008), where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. While *Arbor Hill* is not controlling here because it does not address a common fund fee petition, it supports a thirty percent (30%) recovery in a case like this one where Class and Collective Counsel's fee entitlement is entirely contingent upon success.

43.     All of the factors in *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) weigh in favor of a fee award of thirty percent (30%) of the fund.

44.     The Court also awards Class and Collective Counsel reimbursement of their litigation expenses in the amount of $6,879.39, which is to be paid from the settlement amount.

45.     The attorneys' fees awarded and expenses reimbursed, shall be paid from the settlement amount.

46.     The Court finds reasonable service awards to the Named Plaintiffs in the amount of $3,500.00 each. These amounts shall be paid from the settlement. Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and

continuing as a litigant, and any other burdens sustained by plaintiffs. *See Toure*, 2012 WL 3240461 at * 5 (E.D.N.Y. Aug. 6, 2012) (approving service awards of $10,000 and $5,000); *Sewell*, 2012 WL 1320124 at *14–15 (finding reasonable and approving service awards of $15,000 and $10,000 in wage and hour action); *Reyes,* 2011 WL 4599822 at *9 (approving service awards of $15,000 to three class representatives and $5,000 to fourth class representative in restaurant case challenging tip and minimum wage policies); *Willix,* 2011 WL 754862 at *7 (approving service awards of $30,000, $15,000, and $7,500; *Torres* 2010 WL 5507892 at *8 (finding reasonable service awards of $15,000 to each of 15 named plaintiffs); *Khait*, 2010 WL 2025106 at *9 (approving service awards of $15,000 and $10,000, respectively, in wage and hour class action); *see also Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 200–01 (S.D.N.Y. 1997) ("The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery.").

## X.   Conclusion and Dismissal

47.    The Court approves the terms and conditions of the Settlement Agreement.

48.    The parties shall proceed with the administration of the settlement in accordance with the terms of the Settlement Agreement.

49.    The entire case is dismissed on the merits and with prejudice, with each side to bear its own attorneys' fees and costs except as set forth in the Settlement Agreement. This Final

Order and Judgment shall bind, and have res judicata effect with respect to all FLSA Collective Action Members, and all Rule 23 Class Members who have not opted out of the applicable class.

50.     The Court approves and incorporates herein by reference the releases and waivers set forth in the Settlement Agreement which shall be binding upon the Class and Collective Members as set forth in such agreement.

51.     Neither this Order, Settlement Agreement, nor any other documents or information relating to the settlement of this action shall constitute, be construed to be, or be admissible in any proceeding as evidence (a) that any group of similarly situated or other employees exists to maintain a collective action under the FLSA, or a class action under Rule 23 of the Federal Rules of Civil Procedure or comparable state law or rules, (b) that any party has prevailed in this case, or (c) that the Defendants or others have engaged in any wrongdoing.

52.     Without affecting the finality of this Final Order, the Court will retain jurisdiction over the case following the entry of the Judgment and Dismissal until 30 days after the end of the time for class members to cash their settlement check has expired, as defined in the Settlement Agreement.  The parties shall abide by all terms of the Settlement Agreement and this Order.

53.     This document shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

It is so ORDERED this _____ day of _____, 2016.


                                         _____
                                         Honorable Steven I. Locke
                                         United States Magistrate Judge